E-FILED
Tuesday, 25 August, 2026 11:20:36 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| EVAN SCHMALSHOF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-04080-SLD-RLH |
| | ) | |
| MCDONOUGH COUNTY and NICHOLAS PETITGOUT, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

In this case, Plaintiff Evan Schmalshof complains of several incidents of misconduct by Defendants, McDonough County Sheriff Nicholas Petitgout and McDonough County, related to his previous employment as a Deputy Sheriff in McDonough County. Before the Court is Defendants' motion to strike or dismiss Schmalshof's amended complaint, ECF No. 19. For the following reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND[1]

### I. Factual Background

Schmalshof's amended complaint recounts a number of incidents involving himself and Petitgout that occurred over the span of several years. At the beginning of the relevant period, Schmalshof was employed as a Deputy Sheriff of McDonough County and served as Chief of Police for the Village of Blandinsville, Illinois. Petitgout was the elected Sheriff of McDonough County.

[1] Unless otherwise stated, the facts described in this section are as alleged in Schmalshof's amended complaint. ECF No. 16. For the sake of ruling on a motion to dismiss, the Court "accept[s] as true all factual allegations in the . . . [amended] complaint and draw[s] all permissible inferences in [the plaintiff's] favor." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015).

In early August 2023, for reasons not disclosed in the complaint, Schmalshof's access to the McDonough County Jail was restricted. This limited his ability to perform certain duties as Chief of Police for Blandinsville, such as bookings and custodial transfers. Later that month, on August 16, Petitgout followed Schmalshof in an unmarked vehicle for several blocks. Schmalshof was not stopped. Around this same time, Schmalshof's driver's license record was obtained through LEADS.

On August 18, 2023, Petitgout ordered Schmalshof to provide "truthful testimony to Knox County investigators concerning a review associated with an earlier 2023 incident." Am. Compl. 5, ECF No. 16. Schmalshof did so. Three days later, Schmalshof was blocked from the McDonough County Sheriff's Office's official Facebook page. He could no longer view or interact with content posted on the page.

Prior to these events, Schmalshof had access to "PSIMS," which apparently allowed him access to interagency reports. He used PSIMS only to ensure accuracy and completeness of interagency reports and was never informed that he was not allowed to use it. On September 5, 2023, Schmalshof's PSIMS access was restricted.

On January 26, 2024, Petitgout terminated Schmalshof's employment as Deputy Sheriff. In connection with the termination, Petitgout authored or approved a memorandum alleging misconduct on the part of Schmalshof, including untruthfulness and other improper conduct. He then authorized public statements reporting that Schmalshof had been fired. The public statements quoted from the memo alleging Schmalshof's untruthfulness. Petitgout also reported the alleged misconduct to the Illinois Law Enforcement Training and Standards Board. Schmalshof's PSIMS access was not cited as a reason for the termination.

In March 2024, during a Blandinsville Village Board meeting, the chairman of the Police Committee informed Schmalshof that Petitgout had characterized his PSIMS access as "unethical and potentially improper." *Id.* at 10. Petitgout told Blandinsville that its access to interagency systems would be restored if it fired Schmalshof. The chairman asked Schmalshof to resign, but Schmalshof declined and continued working as the Chief of Police.

On December 8, 2024, Schmalshof's termination from the McDonough County Sheriff's Office was overturned through arbitration and he was reinstated as a Sheriff's Deputy with back pay and benefits. During the period of separation, Schmalshof would have accrued 105 hours of leave pursuant to the collective bargaining agreement ("CBA") covering his employment as a Sheriff's Deputy. The 105 accrued hours were not fully restored upon reinstatement.

On May 16, 2025, Schmalshof began actively campaigning for election as Sheriff of McDonough County. He publicly announced his candidacy on June 22, 2025.

On May 27, 2025, while Schmalshof was on administrative leave from his position as Sheriff's Deputy, he posted on his personal Facebook account: "My five year old could make a more logical statement." *Id.* at 8. He alleges that "[t]he comment was rhetorical criticism of a public communication regarding a homicide investigation, an issue of public concern involving law enforcement transparency and messaging." *Id.* In response, Petitgout initiated disciplinary proceedings, citing Schmalshof's Facebook comment and his prior use of PSIMS.

On August 5, 2025, Schmalshof was again fired from his position as Sheriff's Deputy. The 105 hours of leave that he accrued during his period of separation from the Sheriff's Office were not fully included in Schmalshof's payout following this second termination. Schmalshof requested correction and crediting, but he was not given an opportunity to contest the withholding.

## II. Procedural History

Schmalshof filed his initial complaint, ECF No. 1, on August 19, 2025. He brought claims with another plaintiff, Schmalshof Family Transport LLC. Compl. 1. The complaint raised six counts: (1) a violation of the First Amendment for retaliation against Schmalshof after his testimony to Knox County investigators in August 2023, (2) a violation of the Drivers' Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721–2725, for obtaining Schmalshof's personal information using his driver's license information without consent, (3) tortious interference with Schmalshof's employment contract with the Village of Blandinsville for limiting his access to the county jail, (4) intentional infliction of emotional distress ("IIED") for the above conduct, (5) invasion of privacy for publishing false information about Schmalshof's misconduct when he was fired in 2024, and (6) *Monell* liability against McDonough County. *See generally* Compl. When he filed the complaint, Schmalshof was represented by counsel. *See id.* at 16. The complaint was filed after the Court dismissed a materially identical complaint in a previous case on March 5, 2025. *See Schmalshof v. McDonough County*, No. 3:24-cv-03071-SLD, 2025 WL 714359, at *4 (C.D. Ill. Mar. 5, 2025). After Defendants filed a motion to dismiss, ECF No. 8, the Court dismissed the complaint "[f]or the reasons laid out in the previous [case]." Jan. 13, 2026 Order 4, ECF No. 11. It gave Schmalshof 14 days to submit an amended complaint. *Id.*

Within 14 days of the entry of the Court's order, Schmalshof, who was still represented by counsel, filed two motions on his own behalf: an Emergency Motion to Prevent Dismissal, ECF No. 12, and a Motion for Removal of Counsel, ECF No. 14. The motions generally represented, with supporting evidence, that counsel was not adequately consulting with Schmalshof when pursuing the case and that, as a result, Schmalshof was not appraised of what was happening in his case. *See generally* Emergency Motion. Based on these representations,

the Court granted Schmalshof's motion to remove counsel and proceed *pro se*, *see* Feb. 25, 2026 Min. Entry, and extended the deadline for him to file an amended complaint, *see* Jan. 27, 2026 Text Order.

On March 1, 2026, Schmalshof filed his amended complaint. It brings seven counts, some seeking recovery for facts alleged in his first complaint and some based on new factual allegations. Count III, for viewpoint discrimination, is rooted in some of the same facts as the retaliation claims in his initial complaint but alters the legal theory to focus on Defendants' decision to block Schmalshof's access to the Sheriff's Office's Facebook page in August 2023. Am. Compl. 14–15. Count V, for a violation of the right to due process, centers on Schalshof's first termination, which was the subject of his initial complaint, but raises a new legal theory. *Id.* at 16. Count IV presents the same DPPA claim as that previously dismissed but attempts to allege new facts sufficient to state a claim. *Id.* at 15–16. Counts I, II, and VI stem from Schmalshof's second termination in 2025. *See id.* at 13–14, 17. The factual allegations supporting these three counts are present only in the amended complaint and were not pled in the initial complaint. *See generally id.* The final count seeks to recover from McDonough County for the violations alleged in Counts I, II, III, and V. *Id.* at 17–18.

On April 29, 2026, Defendants filed the present motion to strike or dismiss Schmalshof's amended complaint. They argue that the Court should strike Counts I–III and V–VII because they greatly exceed the scope of the amendment permitted by the Court. Mem. Supp. Mot. Dismiss 9, ECF No. 20. In the alternative, they contend that none of these counts state a claim for relief and therefore should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). *Id.* at 9–15. Count IV, they contend, should also be dismissed because Schmalshof has not alleged an injury from the alleged DPPA violation and consequently lacks standing to bring the

claim. *Id.* at 16. Schmalshof filed a response opposing Defendants' motion in its entirety. *See* Resp. Mot. Dismiss, ECF No. 21.

**DISCUSSION**

**I. Motion to Strike**

When dismissing Schmalshof's prior complaint, the Court granted leave to amend "to address the deficiencies identified in th[e] order." Jan. 13, 2026 Order 4. Defendants ask the Court to strike Counts I–III and V–VII of the amended complaint because they "greatly exceed the scope of the allowed amendment" and "are not good faith attempts to cure those deficiencies but rather attempts to plead entirely new and distinct claims which factually arose after the filing initial complaint [sic]." Mem. Supp. Mot. Dismiss 9. Schmalshof contends that the amendment is appropriate because it is related to a continuing series of retaliatory conduct arising out of the same nucleus of operative fact. Resp. Mot. Dismiss 3.

Courts have the authority to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "District courts have considerable discretion under Rule 12(f)." *Williams v. TopHat Logistical Sols., LLC*, 703 F. Supp. 3d 913, 922 (N.D. Ill. 2023) (quotation marks omitted). Courts frequently exercise their discretion to strike portions of amended complaints that exceed the scope of an amendment allowed by the court. *Buy Direct, LLC v. DirectBuy, Inc.*, No. 2:15-CV-344-JPK, 2023 WL 142704, at *3 (N.D. Ind. Jan. 10, 2023).

In this case, it is questionable whether Schmalshof's amendments are within the scope of amendment anticipated by the Court when it granted leave to amend. He alleges acts that occurred subsequent to the events alleged in his initial complaint and asserts several new legal theories. However, given the particular circumstances of this case, the Court will not strike any

portion of Schmalshof's amended complaint. Although many of the facts are newly alleged, they are plainly framed as a continued series of acts by Petitgout that culminated in his termination in August of 2025. *See generally* Am. Compl. Even if Schmalshof cannot ultimately prove that the events are related, and even if many of the legal theories he asserts depend on only one portion or another of the alleged facts, the new allegations are at least related to the initial pleadings. Further, the amendment does not require the joinder of new parties, and permitting the amendment would not cause prejudice to Defendants since discovery has not begun and they had the opportunity to argue against Schmalshof's new counts on the merits. Finally, since Defendants concede that at least one count does not exceed the scope of the allowed amendment, it would not promote judicial economy to delay the proceedings by striking the counts and requiring Schmalshof to refile, accompanied by a motion to amend, or demanding that he raise the remaining counts in a new case and maintain two parallel proceedings.

The motion to strike is DENIED.

## II. Motion to Dismiss

### a. Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Although detailed factual allegations are unnecessary, the complaint must have 'enough facts to state a claim to relief that is plausible on its face.'" *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When deciding on a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), the court must take "[t]he complaint's well-pleaded factual allegations, though not its legal conclusions, . . . [as] true," *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013), and "draw all inferences in the light most favorable to the nonmoving party," *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

**b. Analysis**

**i. Counts I & II: First Amendment Retaliation**

To state a First Amendment retaliation claim under 42 U.S.C. § 1983, a public employee generally must allege that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the employer's decision. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012); *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013).

**1. Count I: Retaliation for Political Campaign**

In Count I, Schmalshof alleges that Petitgout terminated his employment in 2025 in retaliation for his decision to campaign for election as Sheriff of McDonough County. Am. Compl. 13. Defendants argue that Count I fails as a matter of law because, under the policymaker exception, a sheriff may terminate the employment of a deputy sheriff whose political opposition undermines the loyalty and confidence required by the position. *See* Mem. Supp. Mot. Dismiss 9–10.

Political opposition generally constitutes protected activity and, accordingly, the government may not discharge a public employee based on political affiliation or activity. *Elrod v. Burns*, 427 U.S. 347, 359–60 (1976). However, the policymaker exception provides that, for certain public employees working in positions of trust and discretion, it is constitutionally appropriate to consider political loyalty a prerequisite for continued employment. *See Branti v. Finkel*, 445 U.S. 507, 517–18 (1980). This exception exists to ensure that elected officials can implement the policies endorsed by the electorate through loyal subordinates. *See id.* The inquiry into whether the policymaker exception applies is fact-dependent and considers the duties of the particular office at issue and the powers inherent in that office, *Pleva v. Norquist*, 195 F.3d 905, 912 (7th Cir. 1999); *Vargas-Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 972 (7th Cir. 2001), but not "'the functions performed by a particular occupant of that office,'" *Upton v. Thompson*, 930 F.2d 1209, 1214 (7th Cir. 1991) (quotation marks omitted); *Tomczak v. City of Chicago*, 765 F.2d 633, 640–42 (7th Cir. 1985).

The Seventh Circuit has held that deputy sheriffs generally fall within the policymaker exception. In *Upton*, the court concluded that deputy sheriffs in Illinois "operate with a sufficient level of autonomy and discretionary authority to justify a sheriff's use of political considerations when determining who will serve as deputies." *Upton*, 930 F.2d at 1218. In *Wilbur v. Mahan*, 3 F.3d 214, 217–18 (7th Cir. 1993), the court directly held that an Illinois sheriff could terminate a deputy sheriff who announced his candidacy against the incumbent sheriff. The court reasoned that a deputy sheriff's candidacy against the incumbent sheriff creates a direct conflict of loyalty and confidence within the sheriff's office and described such a candidacy as the political equivalent of a "declaration of war." *Id.* at 218.

Those cases clearly control here and compel dismissal of Count I. Schmalshof does not allege any facts suggesting that deputy sheriffs in McDonough County occupy positions requiring less trust, confidence, or loyalty than the positions in *Wilbur* or *Upton*. And his claims that he served only as a patrol deputy and lacked supervisory, managerial, budgetary, policymaking, and confidential responsibilities, *see* Resp. Mot. Dismiss at 10–23, are unavailing because the relevant inquiry is the power inherent in the office of Deputy Sheriff, not the functions Schmalshof performed in that office.

Count I is DISMISSED because it was constitutionally appropriate for Petitgout to terminate Schmalshof for launching a competing campaign for election as McDonough County sheriff.

**2. Count II: Retaliation for Facebook Activity**

In Count II, Schmalshof alleges, presumably in the alternative, that his employment was terminated in 2025 in retaliation for making critical comments on Facebook.[2] Am. Compl. 13–14. He specifically asserts that Petitgout fired him for posting: "My five year old could make a more logical statement" in response to public communications about an ongoing homicide investigation. *Id.* at 8, 13–14. Defendants contend that dismissal is appropriate because Schmalshof's Facebook post was not protected speech. *See* Mem. Supp. Mot. Dismiss 10–12.

To determine whether a public employee has engaged in constitutionally protected speech, the court must preliminarily determine whether the employee spoke as a private citizen

[2] Just because Petitgout could have fired Schmalshof because of his political opposition, it does not follow that the termination was constitutional if made for other reasons. *See Wilbur*, 3 F.3d at 217 ("The defendant claims the right to fire a confidential or policymaking employee on *any ground*. Interpreted literally, that is a questionable position, though not one on which we are required to rule in this case. The status of being a confidential or policymaking employee exposes a public employee to being fired for belonging to the wrong party. It does not expose him to being fired for belonging to the wrong race, or the wrong church. It may not—though this is a more difficult question—expose him to being fired for engaging in forms of expression that have no conceivable bearing on his job.").

or pursuant to official duties. *Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006). Speech made pursuant to official responsibilities is not protected by the First Amendment. *Id*. at 421–22. If a plaintiff spoke as a private citizen, then courts apply the two-step *Connick-Pickering* framework. *Chaklos v. Stevens*, 560 F.3d 705, 712–13 (7th Cir. 2009). Under this framework, the court first determines whether the speech addressed a matter of public concern, considering the "'content, form, and context'" of the speech. *Id.* at 712 (quoting *Connick v. Myers*, 461 U.S. 138, 147–48, 148 n.7 (1983)). If the employee spoke as a private citizen on a matter of public concern, then courts apply the *Pickering* balancing test, weighing the employee's interest in speaking against the government employer's interest in promoting effective and efficient public service.[3] *Id.* at 714; *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968).

Schmalshof plausibly alleges that he spoke as a private citizen rather than pursuant to official duties. This analysis is practical and focuses on the employee's actual responsibilities rather than formal job descriptions. *Garcetti*, 547 U.S. at 424–25. "The critical question is . . . whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014). There is no indication that Schmalshof ordinarily made Facebook posts or comments as part of his duties at the Sheriff's Office and, even if he did, he posted the comment from his personal Facebook account. Am. Compl. 8. Courts have found that Facebook posts made in similar circumstances

[3] In some circumstances the policymaker exception applies to speech such that courts need not undertake the *Pickering* balancing test. *See Vargas-Harrison*, 272 F.3d at 973 ("In such a situation, the friction between a politically adverse policy-maker and superior poses such a potential disruption to the efficient functioning of government that a fact-specific inquiry is unnecessary."). Though Defendants do not make this argument, the Court notes that it is improper to apply the policymaker exception to bar Count II at this stage. The exception does not apply "when the speech at issue does not implicate the employee's politics or substantive policy viewpoints." *Bonds v. Milwaukee Cnty.*, 207 F.3d 969, 979 (7th Cir. 2000). Given the lack of details in the complaint about the subject of Schmalshof's post, *see* Am. Compl. 8 (describing the post as "a rhetorical criticism of a public communication regarding a homicide investigation"), the Court cannot determine that the speech at issue implicated the Sheriff's Office's politics or substantive policy viewpoints. It is thus improper to apply the policymaker exception to bar Count II at this stage.

were made by the user as a private citizen. *See Zelnis v. O'Connor*, No. 2:22-CV-269-JVB-JEM, 2025 WL 33536, at *9 (N.D. Ind. Jan. 6, 2025) (holding that a correctional officer's posts about jail administration, mask policies, and scheduling were made as a private citizen because they were posted from a personal account and were not aspects of his ordinary employment responsibilities). Further, since Schmalshof was on administrative leave at the time of the comment, Am. Compl. 8, he would not have been expected to make Facebook posts as part of his job performance. *See Walker v. City of Moline Acres*, No. 4:07CV1741RWS, 2009 WL 386815, at *5 (E.D. Mo. Feb. 13, 2009) (agreeing that, even if a police officer would typically be expected to speak to prosecutors pursuant to job duties, it "was not a duty that he was expected to perform while on administrative leave" because, during that time, "he could not speak as a police officer"). The complaint therefore plausibly alleges that Schmalshof's Facebook post was made as a private citizen.

Turning to the *Connick-Pickering* framework, Plaintiff also plausibly alleges that the speech addressed a matter of public concern. Speech involves a matter of public concern when it relates to political, social, or community concerns rather than personal grievances or internal workplace disputes. *Connick*, 461 U.S. at 146. Plaintiff alleges that the comment criticized publicly disseminated governmental messaging concerning a homicide investigation. Am. Compl. 8. Such communication concerning the adequacy of a public investigation into criminal conduct plausibly relates to political, social, or community concerns. *See Gustafson v. Jones*, 117 F.3d 1015, 1019 (7th Cir. 1997) (holding that speech "related to how police investigations are to be conducted" is related to a matter of public concern); *McGreal v. Ostrov*, 368 F.3d 657, 673 (7th Cir. 2004) (holding that statements involving "charges of wrong-doing by public officials" "easily meet the element of touching on matters of public concern").

Finally, it is plausible at this stage to conclude that Schmalshof's interest in speech may have outweighed the Sheriff's Office's interest in promoting effective and efficient public service. The *Pickering* balancing test is "highly fact-specific." *Gustafson v. Jones* (*Gustafson II)*, 290 F.3d 895, 909 (7th Cir. 2002). It considers seven factors:

> (1) whether the speech would create problems in maintaining discipline or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform her responsibilities; (4) the time, place, and manner of the speech; (5) the context within which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decision-making; and (7) whether the speaker should be regarded as a member of the general public.

*Id.* Courts give law enforcement employers greater latitude in regulating employee speech than ordinary public employers and defer considerably to their predictions of potential disruption. *Kokkinis v. Ivkovich*, 185 F.3d 840, 845–46 (7th Cir. 1999).

Several considerations weigh in favor of Defendants. Schmalshof was in an employment position for which personal loyalty and confidence were necessary, *see supra* pt. II(b)(i)(1), and the speech arose against the backdrop of Schmalshof's active preparation to campaign against Petitgout, *see* Am. Compl. 8. As Defendants note, *see* Mem. Supp. Mot. Dismiss 10–12, the Sheriff's Office had an interest in maintaining public confidence, discipline, and operational effectiveness while communicating with the public regarding an ongoing homicide investigation.

However, other factors could tip the balance in Schmalshof's favor. Schmalshof could be regarded as a member of the general public since he spoke from a personal Facebook account, did not identify himself as speaking for the Sheriff's Office, and did not disclose any confidential information, nonpublic information, or investigative details. Am. Compl. 8. Further, any effects of the post on the ability of the Sheriff's Office to effectively serve the public were likely diminished because Schmalshof was on administrative leave when he made the post. *Id.* Since

he was on administrative leave, the speech would also not have impeded Schmalshof's ability to perform his responsibilities.

Critically, the complaint provides limited information about the context of Schmalshof's speech. It does not provide the specific statement he was responding to or why he characterized the communication as illogical. It does not provide details about the homicide investigation, the impact of the post on other employees at the Sheriff's Office, or facts relevant to determine whether the issue was one about which public debate would facilitate informed decision-making. It would be improper to answer these questions without further development of the record. "*Pickering* balancing is not an exercise in judicial speculation." *Gustafson II*, 290 F.3d at 909. Because of its fact-intensive nature, several courts have held that it was improper to conduct a *Pickering* test before discovery. *See, e.g.*, *Beathard v. Lyons*, 620 F. Supp. 3d 775, 783 (C.D. Ill. 2022); *see also Delgado v. Jones*, 282 F.3d 511, 517 (7th Cir. 2002) ("[T]he *Pickering* balancing test[] can seldom be done on the basis of the pleadings alone."). The same is true here. The allegations of the complaint do not provide sufficient context to resolve the *Pickering* balancing test and it is therefore inappropriate to conclude that Schmalshof's speech was not protected since he plausibly alleges that he spoke as a private citizen on a matter of public concern.

**ii. Count III: Viewpoint Discrimination**

In Count III, Schmalshof claims that Petitgout discriminated against him on the basis of viewpoint by blocking him from the McDonough County Sheriff's Office's official Facebook page in August 2023. Am. Compl. 14–15. Defendants argue that Count III should be dismissed because the complaint contains no factual allegations demonstrating that Schmalshof was blocked because of any ideology, opinion, or perspective. Mem. Supp. Mot. Dismiss 13.

"It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995). Thus, "[d]iscrimination against speech because of its message is presumed to be unconstitutional." *Id.* To state a claim for viewpoint discrimination, a plaintiff must show that "(1) government officials regulated her speech and (2) that the regulation was motivated by the ideology or the opinion or perspective that she wished to express."[4] *DeJong v. Pembrook*, 662 F. Supp. 3d 896, 914 (S.D. Ill. 2023) (citing *Rosenberger*, 515 U.S. at 829). A connection between the regulation and the plaintiff's viewpoint is necessary even if the regulation constitutes an individualized speaker-based restriction. *See Robinson v. Hunt Cnty.*, 921 F.3d 440, 445, 449 (5th Cir. 2019) (concluding that the practice of deleting comments and blocking users from an official Facebook page constituted viewpoint discrimination because the page's administrator removed comments specifically criticizing the page's policy as "expressing a policy of deleting and censoring protected speech" and banned those who posted them); *Knight First Amend. Inst. at Columbia Univ. v. Trump*, 928 F.3d 226, 234, 236–37 (2d Cir. 2019), (discussing the unconstitutionality of blocking individual users from a social media page on the basis of viewpoint), *vacated and dismissed as moot sub. nom. Biden v. Knight First Amend. Inst. at Columbia Univ.*, 141 S.Ct. 1220 (2021).

In his amended complaint, Schmalshof pleads no facts that support his conclusory claim that he was "blocked based on his speech, association, political activity, or viewpoint." Am.

[4] In many First Amendment contexts, the Court would have to determine what type of forum the Sheriff's Office's Facebook page is. *See Grossbaum v. Indianapolis-Marion Cnty. Bldg. Auth.*, 100 F.3d 1287, 1296–97 (7th Cir. 1996) (discussing how the nature of the forum impacts the relevant legal standard for analyzing viewpoint discrimination claims under the First Amendment). Conducting such a forum analysis is not necessary in this case because Defendants do not argue that the Facebook page is not a public forum, and viewpoint discrimination is unconstitutional irrespective of whether the forum is a limited or designated public forum. *See Robinson v. Hunt Cnty.*, 921 F.3d 440, 448 (5th Cir. 2019) ("Because Robinson alleges viewpoint discrimination, it is immaterial whether the Facebook page is analyzed as a limited or designated public forum."); *Davison v. Randall*, 912 F.3d 666, 687 (4th Cir. 2019) (similar).

Compl. 15. In his response to the motion to dismiss, he argues that he was blocked "[s]hortly after . . . provid[ing] compelled testimony referencing publicly available pursuit-related communications allegedly inconsistent with [Petitgout's] later characterization of departmental practices." Resp. Mot. Dismiss 8. Schmalshof's complaint discusses providing testimony to investigators a few days before being blocked, *see* Am. Compl. 5, but it does not allege that his testimony was inconsistent with any of Petitgout's positions.

Even considering the new allegations that Schmalshof's testimony was inconsistent with Petitgout's characterization of departmental practices,[5] Schmalshof does not plausibly allege that he was blocked on the basis of viewpoint. He pleads no specific facts to support his conclusory claim that he made statements "allegedly inconsistent" with later statements by Petitgout. To plausibly state a claim, Schmalshof must at least allege enough facts to allow the Court to understand the contours of his claim. And even if the Court accepts his conclusory claim that his statement was "inconsistent" with Petitgout's position, there are no facts to suggest that Schmalshof was blocked to prevent him from expressing his inconsistent statements on the Sheriff's Office's Facebook page. The fact that he was blocked three days after making the statement may be relevant to support his argument that he was blocked because of the purportedly inconsistent statement, *see Kingman v. Frederickson*, 40 F.4th 597, 603 (7th Cir. 2022) (discussing how the timing between protected speech and an adverse action is relevant to causation), but whether it makes his viewpoint discrimination claim plausible would depend on the content and context of his statement. Did he critique the law enforcement priorities of the Sheriff's Office? Did he condemn his supervisors' character? Did he make a factually incorrect

[5] "[D]istrict courts retain discretion to interpret new factual allegations or claims presented in a plaintiff's briefs as a constructive motion to amend." *Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 488 (7th Cir. 2023). In determining whether to do so, courts "should apply the familiar standards governing when leave to amend should be granted, paying particular attention to the potential for prejudice to other parties." *Id.* at 490.

statement regarding the mundane operations of the department, such as the hours it was open to the public? Schmalshof provides no answers to even such basic questions. Without further factual allegations, Schmalshof's claim cannot rise to the level of plausibility. The Court therefore GRANTS Defendants' motion to dismiss Count III.[6]

**iii. Count IV**

In Count IV, Schmalshof alleges that Petitgout violated the Drivers' Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721–2725, by obtaining Schmalshof's driver's license information even though he was not stopped, arrested, or subject to any documented criminal investigation at the time. Am. Compl. 15–16. Defendants argue that Schmalshof does not allege any facts suggesting that he suffered an actual injury as a result of any DPPA violation, and that Schmalshof's DPPA claim should thus be dismissed for lack of standing. Mem. Supp. Mot. Dismiss 15.

A plaintiff must have standing to pursue an action. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). A party has standing to bring suit if they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To satisfy the first prong, an injury must be both "concrete and particularized" and "actual or imminent," as opposed to "conjectural or hypothetical." *Carney v. Adams*, 592 U.S. 53, 58 (2020) (quotation marks omitted).

[6] At times, Count III rings more of a retaliation claim than a viewpoint discrimination claim. Schmalshof seems to argue in part that he was blocked from the Sheriff's Office's Facebook page because of his past speech, not because Defendants feared he would express any particular viewpoint on the Facebook page. *See* Resp. Mot. Dismiss 8. The Court declines to construe Count III as a retaliation claim because past speech can only provide the basis of a retaliation claim if it is protected, that is, if it was made as a private citizen and not pursuant to official responsibilities. *Garcetti*, 547 U.S. at 421. Schmalshof's testimony was likely not made in his capacity as a private citizen since he was "ordered by [Petitgout]" to provide the testimony. *See* Am. Compl. 5.

The Court dismissed Schmalshof's materially identical DPPA claim in 2025 because he "failed to allege that [he] suffered a concrete injury as a result of Petitgout's violation of the DPPA and [he] therefore ha[d] no standing to sue." *Schmalshof*, 2025 WL 714359, at *4. In January 2026, the Court dismissed his second attempt to bring a DPPA claim on these factual grounds because Schmalshof "d[id] not allege any injury stemming from the alleged DPPA violation, nor d[id] he attempt to do so." Jan. 13, 2026 Order 3. As relevant here, Schmalshof's only new allegations in the amended complaint are that "[he] suffered injury fairly traceable to the obtainment, including invasion of privacy, loss of control over personal identifying information, anxiety, and emotional distress." Am. Compl. 15.

Schmalshof's allegations do not support standing. To begin with, "worry and anxiety are not the kind of concrete injury essential to standing." *Baysal v. Midvale Indem. Co.*, 78 F.4th 976, 977 (7th Cir. 2023). And the disclosure of driver's license information is not independently injurious because a driver's license number "is a neutral fact derived from a public records system" and "is not potentially embarrassing or an intrusion on seclusion." *Id.* at 980. Finally, while Schmalshof does not fully explain how Petitgout's actions caused emotional distress, the only reason discernable from his filings is that he feared future enforcement actions by law enforcement. *See* Resp. Mot. Dismiss 10 (arguing that Petitgout's actions "caus[ed] [Schmalshof] and his family to reasonably fear misuse of official authority, targeted governmental scrutiny, and misuse of restricted law-enforcement systems unrelated to any legitimate governmental purpose"). However, worry about future enforcement actions is not a concrete injury for purposes of standing unless there is a "credible threat" of enforcement, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quotation marks omitted), or it is "certainly impending," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401–02 (2013), or the

emotional distress "led to actionable injury," *Florence v. Order Express, Inc.*, 674 F. Supp. 3d 472, 482 (N.D. Ill. 2023) (quotation marks omitted). *See Pierre v. Midland Credit Management, Inc.*, 29 F.4th 934, 939 (7th Cir. 2022) (holding that, when a plaintiff sued over the receipt of a debt collector's letter, emotional distress caused by concern about being sued was "insufficient to confer standing").

As such, Schmalshof lacks standing to bring a DPPA claim. Because this is his third unsuccessful attempt to bring this claim, Count IV is DISMISSED WITH PREJUDICE.

**iv. Counts V & VI: Procedural Due Process**

The Fourteenth Amendment prohibits states from depriving a person of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. To state a procedural due process claim, a plaintiff must identify a constitutionally protected liberty or property interest and then show that the government deprived him of that interest without adequate procedural protections. *Bradley v. Village of University Park*, 929 F.3d 875, 882 (7th Cir. 2019); *Cheli v. Taylorville Cmty. Sch. Dist.*, 986 F.3d 1035, 1038 (7th Cir. 2021).

**1. Count V**

In Count V, Schmalshof alleges that Petitgout publicly accused him of dishonesty and improper conduct in connection with his termination in January 2024 that damaged his reputation and his future employment prospects in law enforcement. Am. Compl. 16. Defendants seek dismissal on grounds that, even accepting the alleged facts as true, they did not deprive Schmalshof of any constitutionally protected interest. Mem. Supp. Mot. Dismiss 13–14.

While injury to reputation is insufficient to trigger due process protections on its own, a plaintiff may establish a protected liberty interest when stigmatizing statements are publicly disseminated in connection with a change in legal status, such as termination from public

employment. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 573–74 (1972); *Martin v. Haling*, 94 F.4th 667, 671–72 (7th Cir. 2024) (identifying such claims as "stigma plus" claims). When a plaintiff alleges that such a deprivation harmed future employment prospects, the theory is rooted in the Constitution's protection of occupational liberty. Occupational liberty is a protected liberty interest under the Due Process Clause and encompasses an individual's "liberty to follow a trade, profession, or other calling." *Wroblewski v. City of Washburn*, 965 F.2d 452, 455 (7th Cir. 1992) (quotation marks omitted). The Seventh Circuit has explained that an occupation consists of a distinct set of professional responsibilities that can be meaningfully distinguished from other occupations and often requires particular training, education, or licensure. *Biggs v. Chi. Bd. of Educ.*, 82 F.4th 554, 560–61 (7th Cir. 2023). Conversely, the Due Process Clause does not protect an individual's right to retain a particular position, rank, employer, or level of prestige. *See Roth*, 408 U.S. at 575 ("It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another."); *Martin*, 94 F.4th at 671–72 ("The Fourteenth Amendment ensures a person's liberty to pursue a calling or occupation, not the right to a specific job." (quotation marks and alteration omitted)).

To state a claim for deprivation of occupational liberty, a plaintiff must plausibly allege: "(1) the defendant made stigmatizing comments about him; (2) the comments were publicly disclosed; and (3) he suffered a tangible loss of other employment opportunities as a result of the public disclosure." *Palka v. Shelton*, 623 F.3d 447, 454 (7th Cir. 2010). The third element requires that a plaintiff have been "essentially frozen out from all meaningful opportunities to work [in his chosen occupation]." *Biggs*, 82 F.4th 554, 562. Defendants argue that Schmalshof's complaint establishes that he did not suffer a loss of other employment

opportunities since, after his termination, Schmalshof remained employed as Chief of Police in Blandinsville and was later reinstated as a McDonough County Deputy Sheriff. Mem. Supp. Mot. Dismiss 13–14.

The Court agrees; Schmalshof does not plausibly allege that Petitgout's public disclosure of stigmatizing statements excluded him from pursuing an occupation within law enforcement. Schmalshof alleges that, after the stigmatizing comments were publicly disclosed, he remained employed as the Chief of Police in Blandinsville and, following arbitration, was reinstated to his position as a McDonough County Deputy Sheriff. Am. Compl. 7–8. He claims that Petitgout's actions "foreclosed employment opportunities in his chosen profession," *id.* at 16, but alleges no facts to support this conclusory claim. While Schmalshof was asked to resign from his position as Chief of Police in Blandinsville, he declined to do so and was able to keep his job. *Id.* at 10. Schmalshof does not identify any inability to obtain employment, lost job opportunities, rejected applications, or revocation of certifications, nor does he allege other facts demonstrating that Petitgout's statements effectively foreclosed his ability to work in law enforcement.

This case is similar to Seventh Circuit cases where the court held that the plaintiff had not stated a claim for deprivation of occupational liberty. In *Martin*, the owner of an elevator service and repair business alleged that she was deprived of occupational liberty after a state agency reported that her business engaged in illegal behavior and recommended that a state university terminate all existing contracts with her business. *Martin*, 94 F.4th at 670. The court held that the owner did not state a claim because, even if she was effectively barred from obtaining certain government contracts, she still owned her business and was able to pursue contracts with other entities. *Id.* at 673. Like the plaintiff in *Martin*, even if Schmalshof struggles to obtain

employment in certain sheriffs' offices, he has not fully lost his prior employment and remains able to pursue positions with other offices.

Also convincing is *Biggs*, in which an interim principal was unable to obtain employment as a school administrator after she was fired for violating school policies and her former employer disclosed the reasons for her firing at several public meetings. *Biggs*, 82 F.4th at 557–58, 562. The Seventh Circuit held that she had not applied to enough positions to establish that she experienced "anything more than the customary difficulties and delay that individuals encounter when looking for a new job." *Id.* at 563. While *Biggs* involved a motion for summary judgment, not a motion to dismiss, *see id.* at 557, it shows that hardship in obtaining future employment is an essential part of a claim for deprivation of occupational liberty. Schmalshof need not prove his claim at this stage, but his allegations must plausibly suggest that he is entitled to the relief he requests. In this case, the allegations do not support such a finding. Schmalshof does not allege that he was barred from *any* specific employment opportunities, much less that he faced sufficient hardship to show that his ability to obtain new work was less than that of any job seeker.

Because the public disclosures did not result in a complete foreclosure of occupational opportunity, the Court GRANTS Defendants' motion to dismiss Count V.

**2. Count VI**

In Count VI, Schmalshof claims that Petitgout deprived him of property without due process of law by failing to include accrued leave in his payout after being fired in August 2025. Am. Compl. 17. Defendants argue that Schmalshof's claim fails because it seeks the enforcement of an arbitration award. Mem. Supp. Mot. Dismiss 14 (citing *Chaney v. Suburban Bus Div. of Reg'l Transp. Auth.*, 52 F.3d 623, 631 (7th Cir. 1995)).

In *Chaney*, the eponymous bus driver employed by the state was suspended and then fired after the bus he was driving hit and injured a pedestrian. *Chaney*, 52 F.3d at 626. After his dismissal, the dispute was arbitrated pursuant to the grievance procedure of the governing CBA, and an arbitration panel ordered that Chaney be reinstatement and awarded all wages and benefits lost because of the termination. *Id.* The state refused to pay Chaney any lost wages or benefits from the date of his suspension until the date of his reinstatement because he was a part-time worker without an hourly guarantee. *Id.* Chaney then sued in federal court arguing, *inter alia*, that the state's failure to comply with the arbitration award violated his due process rights. *Id.* at 626–27. The Seventh Circuit held that Chaney had not stated a claim for a due process violation because, "[b]oth contractually and as applied, the CBA provide[d] [Chaney] with a full hearing after a termination and a complete remedy." *Id.* at 631. It continued that the state's failure to comply with the arbitration award "d[id] not strip the CBA of its constitutional sufficiency because Chaney ha[d] an adequate method of enforcing the arbitration award through the initiation of state court proceedings." *Id.* The court clearly held that "[a] refusal to pay an arbitration award does not in and of itself establish a due process violation." *Id.*

Defendants contend that *Chaney* controls because the gravamen of Schmalshof's claim is that Petitgout "refused to pay his accrued leave as awarded in the grievance arbitration associated with his first termination." Mem. Supp. Mot. Dismiss 14. However, this argument misreads Schmalshof's allegations. He does, admittedly, allege that that "[his] accrued leave during the separation period was not *fully* credited upon reinstatement," but he continues that "restored *or* accrued leave was not fully included in the payout following the second termination." Am. Compl. 17 (emphasis added). Construing the facts in the light most favorable to Schmalshof, as is required at this stage, he alleges that after he was reinstated following his first termination, at

least some accrued leave was credited to him pursuant to the arbitration award. Nevertheless, even the "restored" leave was not fully included in the payout following his second termination (for which there was no arbitration award). Am. Compl. 17. For at least these hours of leave, the issue is not that Petitgout refused to comply with the arbitration award, but that after the award was honored, Schmalshof was later deprived of the accrued leave without "meaningful process to contest and correct the deprivation." *Id.* Defendants' motion to dismiss Count VI is DENIED.

**v. Count VII: Monell Liability**

In Count VII, Schmalshof seeks to recover from McDonough County for the constitutional violations alleged in Counts I, II, III, and V. Am. Compl. 17–18. He claims that it is proper to hold McDonough County liable under *Monell v. Department of Social Services of the City of New York.*, 436 U.S. 658 (1978), because Petitgout acted pursuant to his final policymaking authority in the county. *Id.* Defendants argue that Schmalshof's *Monell* claim must fail because Petitgout did not wield sufficient authority for his actions to be attributed to McDonough County. Mem. Supp. Mot. Dismiss 14–15.

A municipality cannot be held vicariously liable under 42 U.S.C. § 1983 for the actions of its agents. *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021). Instead a municipality can only be held liable for a constitutional violation that "was caused by a governmental 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Id.* (quoting *Monell*, 436 U.S. at 694).

In Illinois "[t]he Sheriff is an independently-elected constitutional officer who answers only to the electorate, not to the [county]." *Thompson v. Duke*, 882 F.2d 1180, 1187 (7th Cir. 1989); *Bertha v. Hain*, 787 F. App'x 334, 339 (7th Cir. 2019). As a result, the sheriff is not an agent of the county as an institution and therefore is not a policymaker for which the county can

be held liable. *Bertha*, 882 F.2d at 339; *Mortensen v. Arrowood*, 711 F. Supp. 3d 935, 937 (N.D. Ill. 2024). Because Schmalshof identifies no reason to hold the county liable besides Petitgout's purported policymaking authority, *see* Resp. Mot. Dismiss 12–13, his *Monell* claim cannot prevail. Schmalshof's claims against McDonough County are therefore DISMISSED.

**CONCLUSION**

Accordingly, Defendants McDonough County and Nicholas Petitgout's motion to dismiss, ECF No. 19, is GRANTED IN PART and DENIED IN PART. All claims against McDonough County are DISMISSED. The Clerk is directed to terminate it as a party on the docket. Count II, for retaliatory firing in response to Plaintiff Evan Schmalshof's Facebook post, and Count VI, for the deprivation of Schmalshof's accrued leave without due process, may proceed against Petitgout. The remaining counts are DISMISSED. Count IV is DISMISSED WITH PREJUDICE.

Entered this 25th day of August, 2026.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE